IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CAROL LACEY, as Personal Representative
and on behalf of the Estate of WAYNE LACEY, deceased,

        Plaintiff,

v.                                        CIVIL ACTION NO. 2:09-cv-00736

ACTAVIS TOTOWA, LLC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants' motion for sanctions [Dckt. 18]. Also pending is plaintiff's unopposed motion for a one-week extension to respond to the motion for sanctions. [Dckt. 20]. I **GRANT** the motion for an extension.

The defendants moved for sanctions up to and including dismissal of the complaint in this civil action asserting that relief was warranted under Federal Rule of Civil Procedure 11. Defendants contend there is no evidentiary support for the factual contention in the complaint that Digitek caused the injury and subsequent death of decedent Wayne Lacey. The defendants asserted that although plaintiff's counsel alleged she possessed a portion of plaintiff's medical records at the time of filing of the complaint, "[n]one of medical records provided to Defendants show that Mr. Lacey ever had an elevated digoxin level or that digoxin or digoxin toxicity caused his death." (Memo. in Suppt. at 2). Defendants specifically argued in support of their motion that "[s]ince no

evidence supported the assertion that Digitek caused Mr. Lacey's alleged injuries, the filing of Plaintiff's complaint violated Rule 11." *Id.*

Plaintiff's response to the motion for sanctions asserts in pertinent part that:

> First, Wayne Lacey took the recalled, defective, and toxic Digitek pills for a very prolonged amount of time in 2002, 2003, 2006, 2007 and 2008. This is known to Plaintiff's prior to filing suit in this case because the lot numbers listed on the pharmacy records matched up with the lot numbers of the pills listed in the Digitek recall list.[1]
>
> . . .
>
> Second, after ingesting the recalled and defectively manufactured pills, Mr. Lacey suffered the following complications known to be related to prolonged use of defective [D]igitek ingestion: hypertension, severe chest pain, sudden and significant drops in systolic pressure, heart rhythm alterations, intensified congestive heart failure, normal findings on stress tests and echocardiogram, and normal LVEF which are suggestive of digoxin toxicity as the source of symptoms and not underlying cardiac illness. ... Said information was also known [sic] the Plaintiff's prior to filing suit in the case.
>
> . . .
>
> Based on the amount and duration of ingested recalled pills and the injuries suffered by Mr. Lacey [including three hospitalizations], there exist reasonable grounds to support a claim in this case and sanctions are not appropriate.
>
> . . .
>
> Plaintiff acted diligently in requesting records and through no fault of the Plaintiff rather intentional misconduct of the healthcare providers that certain records were not provided in a timely fashion. Plaintiff counsel had an ethical and legal obligation to protect the client's claims and relevant statue [sic] of limitations and as such timely filed a lawsuit in this case.

(Memo in Resp. at 2-3). Plaintiff's counsel alleges she was unable to discuss defendants' motion for sanctions with the plaintiff during the safe harbor period despite repeated attempts to do so. On

---

[1]The plaintiff allegedly obtained such records in April 2009, a few weeks after the request and months prior to filing suit. This supports the plaintiff's denial of Request for Admission number 2 concerning possession of medical or pharmacy records when filing the compliant.

January 20, 2010, plaintiff's counsel contacted defense counsel to advise that although there is a valid claim, Ms. Lacey wished to voluntarily dismiss the case in exchange for the defendants dismissing the motion for sanctions. Defense counsel allegedly refused to do so.

Defendants' reply states that "[plaintiff's counsel] filed this action without any evidence that the Digitek of Decedent Wayne Lacey contained an elevated dosage of digoxin, or that Decedent's allegedly defective Digitek caused his alleged injuries." (Def. Reply at 1). It further states that in the opposing brief, "Plaintiff's Counsel fails to present any evidence that Digitek or digoxin toxicity caused Mr. Lacey's death." (*Id.*). The reply asserts that neither plaintiff nor plaintiff's counsel is qualified to render any causation opinion. The medical summary provided by the defendant and attached to the reply states "[t]he records provided do not establish that Digitek caused his injury." (Med. Summary at 1). Lastly, the reply takes issue with plaintiff's counsel's statute of limitations defense. The defendants argue that despite plaintiff's counsel's difficulty in obtaining medical records in a timely fashion due to healthcare provider failure to provide, "[a] looming statute of limitations deadline does not release Plaintiff's Counsel from her Rule 11 obligations."[2] (Def. Reply at 4). They offer no specific argument that there was not in fact a looming statute of limitations problem in this instance.

Plaintiff's counsel was granted leave to file a supplement to plaintiff's initial response to defendants' motion for sanctions. The memorandum states in pertinent part:

---

[2] While I agree a statute of limitations problem does not relieve counsel of basic Rule 11 obligations, defendants ironically quote a portion of PTO 39 indirectly addressing a situation where medical and pharmacy records may not be reasonably available during a pre-filing investigation and there is an impending statute of limitations issue. *See* PTO #39 at 13. ("Based upon the allegations contained in the complaints, a pre-filing investigation without first obtaining medical and pharmacy records would be reasonable only in an extremely limited set of circumstances.") The ruling leaves room for those cases in which a prefiling investigation short of obtaining pharmacy or medical records might still be deemed reasonable as in the case of a looming statute of limitations.

-3-

> [L]ead counsels for Digitek MDL have yet to establish some verifiable, agreed-upon method for measuring the recalled, defective pills. Accordingly, what is known at this point is that the pills were defective for having an incorrect dose of Digitek. As Defense counsel acknowledges, it is only an allegation of the Plaintiffs that the recalled Digitek pills contained a double dose, as no method for testing the amount of digoxin therein has been agreed upon to this point. A similar allegation is that some of the recalled Digitek pills caused significant health problems due to an abnormally low dose of digoxin being contained within the pills.
>
> . . .
>
> Specifically with regard to Wayne Lacey, it is evident from his records that he suffered an injury due to the recalled Digitek pills containing an incorrect dose of digoxin. More specifically, his injury was caused due to a dose of digoxin within the Digitek pills that was significantly lower than it was supposed to be.

Supple. Memo. at 2.

Lastly, the plaintiff attached to her supplemental memorandum an affidavit from Joshua Furman, M.D.. Dr. Furman attests that it is his opinion "within reasonable medical probability that Wayne Lacey likely ingested defective Digoxin pills throughout the years of 2002-2008, and as a result, suffered significant injuries, including but not limited to, cardiac instability, and symptoms with heart problems that likely contributed to his death."[3] (Aff. at 1). He further attests that "Mr. Lacey continued to suffer significant symptoms related to his ingestion of the defective Digitek pills" and "[a]gain, it is my opinion within reasonable degree of medical probability that Mr. Lacey was given defective pills throughout this time, as evidenced from the recalled lot numbers." (Aff. at 2). *Id*. at 2. The defendants have not filed a surreply.

Based on the foregoing, I find that the plaintiff in this case has produced in response to the motion for sanctions the exact type of evidentiary support contemplated by the defendants to avoid their filing of a Rule 11 sanctions motion. Since the defendants have already filed such a motion

---

[3]While Dr. Furman refers to "Digoxin" pills in this part of his affidavit he specifically refers to Digitek pills in other parts of the affidavit. He appears to use the terms interchangeably.

in the instant case and have chosen not to withdraw it, I hereby **DENY** the motion. I do so without reaching a substantive discussion on the necessity for this type of evidentiary support to defend a Rule 11 sanction motion in the context of this MDL. I would note, however, that to impose such a bright line, prefiling standard would in effect require counsel to secure the type of proof necessary to withstand a motion for summary judgment. Such a purpose was not contemplated by Rule 11. Accordingly, motions for Rule 11 sanctions will not be accepted as suitable substitutions for summary judgment motions to be filed at the appropriate time in this MDL.

    The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                            ENTER:       April1, 2010

                                                  Joseph R. Goodwin, Chief Judge